```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
SUZANNE (SUSAN) CONNOR, pro se,           :
                                          :
                          Plaintiff,      :
                                          :
                                          :       **MEMORANDUM AND ORDER**
                                          :       01-CV-0642 (DLI) (MDG)
                                          :
              -against-                   :
                                          :
NEW YORK STATE DEPARTMENT OF              :
CORRECTIONAL SERVICES,                    :
                                          :
                          Defendant.      :
----------------------------------------------------------x
```

**DORA L. IRIZARRY, U.S. District Judge:**

  Plaintiff Suzanne Connor ("Connor" or "Plaintiff") brought suit against the New York State Department of Correctional Services ("DOCS") alleging that DOCS violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et. seq.*, as amended ("Title VII") and the New York State Human Rights Law ("N.Y.S.H.R.L.") by denying her requests to transfer into open positions at the Arthur Kill Correctional Facility in Staten Island ("Arthur Kill") once in 1998 and twice in 1999. DOCS moved for summary judgment on all of Connor's claims pursuant to Fed. R. Civ. P. 56. For the reasons set forth below, DOCS's motion is granted in its entirety.

## Background

  Connor, a Caucasian female, began employment at DOCS in January 1985. Defendant's Local Rule 56.1 Statement ("Defs. R. 56.1 Stat.") ¶ 2. From 1985 to 1994, Connor worked at Arthur Kill. *Id.* Her highest position at Arthur Kill was Calculation Clerk II. *Id.* She attained this position by passing the requisite tests. In 1992, Connor passed the "principal series" that allowed her to be promoted to the "Principal Clerk Personnel" position at Queensboro Correctional Facility

("Queensboro") in Queens. *Id;* Plaintiff's Counter Statement of Facts ("Pl. Stat.") ¶ 2. Connor received the promotion despite negative comments by her former co-workers and supervisors at Arthur Kill, including comments about her association with African-American men. Pl. Stat. ¶ 2.

In November 1998, the position of Principal Clerk Personnel at Arthur Kill became available. Defs. R. 56.1 Stat. ¶ 3. Connor sought the transfer but another candidate was selected. *Id.* According to Connor, the candidate selected was less qualified. Pl. Stat. ¶ 3-4. DOCs maintains that the person selected was more qualified than Connor and had been the acting Principal Clerk Personnel at Arthur Kill. Defs. R. 56.1 Stat. ¶ 4.

In February 1999, the position of Head Account Clerk became available at Arthur Kill. Connor once again sought to be transferred from Queensboro to Arthur Kill. Defs. R. 56.1 Stat. ¶ 5. Again, another candidate was selected. *Id.* at ¶ 6. Without disputing the selected candidate's qualifications, Connor asserts that she was "the most" qualified for the Head Account Clerk position, in part, because, at Arthur Kill, the Head Account Clerk position was similar to the Principal Clerk Personnel position. Pl. Stat. ¶ 6. According to DOCS, the candidate selected for the position served as Arthur Kill's Principal Account Clerk, the position directly below Head Account Clerk, for thirteen years. Defs. R. 56.1 Stat. ¶ 6.

In May 1999, Connor filed a complaint with the New York State Division of Human Rights ("NYSDHR"). Defs. R. 56.1 Stat. ¶ 7. Connor alleged in the complaint that the denial of her multiple requests to be transferred to Arthur Kill was motivated by racial animus because she was once married to an African-American. *Id.* The complaint was dismissed. *Id.* at ¶ 9. In June of 1999, Connor filed a complaint with DOCS' Office of Diversity Management on essentially the same grounds as her complaint to NYSDHR. *Id.* at ¶ 10. This complaint was also dismissed. *Id.*

Sometime between June 1999 and October 1999, the Head Account Clerk position at Arthur Kill became available, and again Connor was not transferred to Arthur Kill. *Id.* at ¶ 11. However, around the same time (September 1999), Connor was selected to become Head Account Clerk at the Edgecombe Correctional Facility in Queens. *Id.* at ¶ 11. Connor accepted the position and was transferred to Edgecombe. *Id.* Again, Connor alleges that she was not transferred to Arthur Kill based on racial animus and that the candidate selected for the Arthur Kill position was less qualified. Pl. Stat. ¶ 12. DOCS asserts that the candidate selected for the Arthur Kill job was more qualified than Connor. Defs. R. 56.1 Stat. ¶ 11.

At her deposition, Connor alleged that numerous individuals were responsible for spreading rumors about her personal life, namely her marriage to an African-American. *See* Declaration of John Knudsen in Support of Defendant's Motion for Summary Judgement ("Knudsen Aff."), Exhibit D. However, Connor has not submitted affidavits by any witnesses to the alleged rumors.

New York is a dual filing state. As such, Connor filed a timely complaint with the EEOC when she filed a complaint with the NYSDHR in May 1999. *See Ford v. Bernard Fineson Development Center*, 81 F.3d 304, 306-309 (2d Cir. 1996). A right to sue letter was issued on November 2, 2000 in which the EEOC adopted the findings of NYSDHR and denied Connor's complaint. Knudsen Aff., Exhibit C. This action was commenced on February 5, 2001.

**Discussion**

When evaluating a motion for summary judgement, the court must view all facts in the light most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). In drawing inferences in favor of the nonmoving party, "the court is not entitled to weigh the evidence." *St. Pierre v. Dyer*, 208 F.3d 394, 404 (2d Cir. 2000).

Nevertheless, "[c]onclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998). To defeat a motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). There is no issue for trial unless there exists sufficient evidence in the record favoring the party opposing summary judgment to support a jury verdict in that party's favor. *Anderson*, 477 U.S. at 249-50. "[I]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* (internal citations omitted).

Connor's allegations of discrimination revolve around the multiple denials of her requests to be transferred from Queensboro to Arthur Kill when positions opened at Arthur Kill. She claims, in essence, that, because she was once married to an African-American, DOCS employees conspired to deny her the Arthur Kill positions in favor of less qualified colleagues.

As a prerequisite to filing a civil action in federal court, Title VII requires a plaintiff to file an administrative charge with the EEOC or a local equivalent agency within 300 days after the alleged discriminatory acts. 42 U.S.C. § 2000e-5(e)(1); *Butts v. City of New York Dep't of Hous. & Pres. & Dev.*, 990 F.2d 1397 (2d Cir. 1993) (holding that a district court only has jurisdiction to hear Title VII claims that are included in an EEOC charge); *Crossman v. Crosson*, 905 F.Supp. 90, 92 (E.D.N.Y. 1995). Connor alleges that her transfer requests were denied on three separate occasions. Thus, in order to qualify for review, Connor needs to have filed her complaint with the NYSDHR within 300 days of each of the alleged incidents of discrimination. DOCS does not dispute that the May 1999 NYSDHR complaint was filed within 300 days of the Connor being

4

denied the Principal Clerk Personnel position at Arthur Kill (November 1998) and the Head Account Clerk position (February 1999). However, DOCS claims that Connor failed to exhaust her administrative remedies with respect to the third incident (sometime between June 1999 and October 1999) because her complaint to NYSDHR predated the alleged discriminatory action.

On this point, DOCS is incorrect. Subsequent conduct is reasonably related to conduct in an EEOC charge if: (1) the claim would fall within the reasonably expected scope of an EEOC investigation of the charges of discrimination; (2) it alleges retaliation for filing the EEOC charge; or (3) the plaintiff "alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." *Alfano v. Costello*, 294 F.3d 365 (2d Cir. 2002) (*quoting Butts v. City of N.Y. Dep't of Hous. Preservation and Dev.*, 990 F.2d 1397, 1402-03 (2d Cir. 1993)). Here, Connor's charge that she was discriminated against the third time she applied for a transfer could be reasonably read as alleging retaliation for her filing of the EEOC charge. Likewise, the alleged discriminatory act was carried out in exactly the same manner as the discrimination alleged in the charge. Therefore, Connor's third alleged incident of discrimination, like the first two, it is properly before this court.

Nevertheless, all of Connor's claims of discrimination fail on a substantive level since she has failed to allege a prima-facia case of discrimination. Under the framework set out by the Supreme Court in *McDonnell Douglas Corp. v Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), the plaintiff carries the initial burden of proving a prima facie case of discrimination. *Id.* To establish a prima facie case, the plaintiff must show that (1) she is a member of a protected class; (2) she is qualified for the position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of

5

discrimination. *Abdu Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001). Connor is a Caucasian woman who was once married to an African-American. Although the Second Circuit has not reached the issue, courts of concurrent jurisdiction have found that discriminating on the basis of marriage to a members of a protected class is actionable under Title VII, and this court sees no reason to disrupt that holding. *See Rosenblatt v. Bivona & Cohen, P.C.,* 946 F.Supp. 298, 300 (S.D.N.Y. 1996) (collecting cases).

First, as a matter of law, the denial of the plaintiff's transfer requests did not amount to an adverse employment action. The court is aware that "there is no bright line rule for determining whether the challenged employment action reaches the level of adverse. Courts must therefore pore over each case to make this determination." *Joseph v. Thompson*, No. Civ. A95-CV-4898, 2005 WL 3626778, at *6 (E.D.N.Y. March 23, 2005) (internal quotations omitted). The court has "pored" over the scant submissions from Connor, as well as the numerous affidavits and exhibits submitted by DOCS and finds that there is no genuine issue of fact that the denials of the transfer requests did not constitute adverse employment actions in contravention of Title VII. Aside from her subjective desire to cut her commuting time, there is no evidence that DOCS refusals to transfer Connor to positions available at Arthur Kill constituted adverse employment actions.

The law in this circuit is clear. An employment action is only discriminatory when it is both material and is to the disadvantage of the aggrieved employee. *See Williams v. R.H. Donnelley Corp.,* 368 F.3d 123, 128 (2d Cir. 2004) ("an employer's denial of a transfer request that would have resulted in a reduction in pay and the employee's demotion within the organization, without more, does not constitute an adverse employment action."); *See also Hill v. Rayboy-Brauestein,* 02 CV 3770, 2006 WL 3298383, *8 (S.D.N.Y. Nov. 9, 2006) (transfer not an adverse employment action

unless it is "accompanied by materially adverse changes in employment, such as a demotion or a loss of wages."); *Pimentel v. City of New York*, No. 00-CV-326, 2002 WL 977535, *4 (S.D.N.Y. May 14, 2002)("[d]enial of 'requested transfers [that] did not involve an upgrade in position or increases in wages' is not an adverse employment action") *(quoting Gonzalez v. Federal Express Co.,* 95-CV-3529, 1998 WL 289722, *4 (S.D.N.Y. June 3, 1998)). Connor has not put forward any evidence that the denial of her transfer request did anything more than force her to continue her inconvenient commute to Queensboro. In fact, Connor has demonstrated that the position she sought at Arthur Kill was exactly the same as the position she held at Queensboro (Principal Clerk Personnel). *C.f. Galabya v. New York City Bd. of Ed.,* 202 F.3d 636, 641 (2d Cir. 2000) (finding an adverse employment action where "the transfer was to an assignment that was materially less prestigious, materially less suited to his skills and experience or materially less conducive to career advancement.").

Similarly, there is no evidence that DOCS's denial of her first and second request to be transferred to the Head Account Clerk post at Arthur Kill (from her post as Principal Clerk Personnel at Queensboro) was an adverse employment action. In fact, Connor alleges that, at Arthur Kill, the job of Head Account Clerk is almost identical to that of Principal Clerk Personnel. *See* Pl. Stat. ¶ 6. Therefore, the denials of the transfers were not an adverse employment actions. *Williams,* 368 F.3d at 128 ("subjective, personal disappointments do not meet the objective indicia of an adverse employment action"); *See also Garber v. New York City Police Dept.,* 95-CV-2516, 1997 WL 525396 (S.D.N.Y. August 22, 1997) *aff'd* 159 F.3d 1346 (2d Cir. 1998) (unpublished decision); *Harrison v. New York City Off-Track Betting Corp*., 99-CV-6075, 2001 WL 1154691, *3 (S.D.N.Y. Sept. 28, 2001) ("subjective dissatisfaction with assignments does not constitute adverse

7

employment action").

Even if the court assumes (against all available evidence) that the denial of the transfer to Arthur Kill was an adverse employment action, Connor has presented no evidence that it was tied to her association with African-Americans. Connor has only alluded to the vaguest of evidence that the adverse employment action was connected to her husband's race, and such vague allegations are not sufficient to create a material issue of fact appropriate for a jury. *See, e.g. Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir.1998) (isolated and disconnected derogatory remarks by a decision maker are by themselves insufficient to raise an inference of discrimination.); *Schreiber v. Worldco, LLC*, 324 F.Supp.2d 512, 518 (S.D.N.Y.2004) ( to create an inference of discrimination, the remarks must either be accompanied by additional evidence of discrimination, or the plaintiff must demonstrate a nexus between the remarks and the adverse employment action that was suffered).

**Conclusion**

Defendant's motion for summary judgment is granted in its entirety and this matter is dismissed without costs to either party.

SO ORDERED.

DATED:   Brooklyn, New York
         March 9, 2007

_____/s/_____
DORA L. IRIZARRY
United States District Judge